## GERMALENE CHEMICAL CO., Inc., v. VIRGINIA HOTEL CO., Inc.

### No. 4841.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 5, 1934.

Hudson, Potts & Bernstein, of Monroe, for appellant.

O. A. Easterling, of Monroe, for appellee.

MILLS, Judge.

This case is before us on appeal from a judgment in favor of plaintiff as prayed for, rendered in the city court of the city of Monroe, La.

The Germaline Chemical Company, Incorporated, a Texas corporation, is suing the Virginia Hotel Company, Incorporated, of Monroe, for $106, the price of disinfectant shipped to it upon an order dated July 12, 1930, given by H. M. Ford, allegedly the duly authorized manager of defendant company. This question of agency is the only issue in the case. The burden of proving it rests upon the plaintiff. Henry Knight & Son v. Shall, 9 La. App. 98, 119 So. 80.

It appears that prior to June 4, 1930, negotiations were being conducted by Messrs. Sibley, Thigpen, West, and Allen for the purchase by them of the stock of the Virginia Hotel Company, Incorporated. The property was acquired on June 4, 1930, and on that afternoon the above-named purchasers and Mr. Fred Hudson met and perfected a reorganization of the corporation. West was elected president; Sibley, vice president; Hudson, secretary. Thigpen was made general manager with full authority to designate a resident manager. The minutes of the meeting do not show that such a designation was made. Mr. Hudson, the secretary, so testifies, and says further that he asked whether or not the minutes should show such a designation of Mr. Ford, to which Mr. Thigpen replied, "No"; that was a matter that would be attended to later on.

The plaintiff offers only three witnesses —Ford, the shipping clerk, and the secretary-treasurer of the plaintiff at Houston. The latter two know nothing about Ford's authority or employment. Sam Goldberg, the secretary-treasurer, deposes that the order was taken by the president of the company, S. L. Basch, in person, who "took all precautions to see that the order was given by a bona fide purchasing agent before the order was sent in for proper shipping." Basch, though a material witness for plaintiff and apparently

available and under its control, does not testify. The failure to offer him justifies the presumption that his testimony would be injurious to the cause of plaintiff. Rubenstein v. Files, 146 La. 727, 84 So. 33; State v. Johnson, 151 La. 625, 92 So. 139.

To sustain the burden of proof, plaintiff, then, has only the testimony of Ford weakened by the unfavorable presumption as to that of Basch.

 We find Ford's testimony vague and unsatisfactory. He testifies that he was employed by Mr. Sibley prior to the purchase of the stock, to serve as resident manager at a salary of $400 per month. · He bases this conclusion upon a conversation, in the course of which, he says, Sibley asked him if he would so serve in the event he and his associates should purchase this hotel. He admits there was no contractual arrangement subsequent to this talk other than a notation of his employment in the minutes of the stockholders' meeting referred to above. As to the notation he is contradicted by Mr. Hudson. Furthermore, when these minutes were offered in evidence by defendant their admission was objected to and excluded erroneously on the ground of irrelevancy. They were the best evidence that defendant could offer to rebut the testimony of Ford as to the notation of his employment. As they were objected to by plaintiff, we cannot avoid the conclusion that they failed to contain such a notation. Ford states that he moved into the Virginia Hotel and acted as its resident manager from June 15th until he was discharged on August 5, 1930; that his salary was fixed at $400 per month, but that he only drew in all two hundred and some odd dollars; that during that time he made ordinary purchases, such as mops, brooms, linen, disinfectant, etc., for the hotel company without objection, but admits that this was the first purchase from plaintiff.

Clearly, Sibley had no authority to employ Ford prior to the purchase of stock, even if the conversation testified to could be construed as a hiring. The preponderance of the testimony is that he was not employed at the board meeting, and that no such notation appears in its minutes. The power to designate a resident manager was at this meeting especially conferred upon Thigpen. Ford does not contend that he was ever hired by Thigpen, who testifies positively that Ford was not an employee of the company and never at any time had authority to make purchases on its behalf; that he alone had the authority to appoint agents or make purchases. ,

As to Ford's being in the hotel, he admits that the company has charged room rent against him, and it is shown that ejectment proceedings were drawn up to get him out.

 Though we hesitate to reverse the decision of the lower court upon a question of fact, we find in this case it is manifest that no specific employment or authorization is proven, nor is it shown that plaintiff made this sale under the impression that Ford was authorized because he held himself out as the agent of defendant with its knowledge and acquiescence.

For the reasons assigned above, the judgment appealed from is reversed, and judgment is now rendered rejecting the demands of plaintiff at its cost in both courts.